**In re Francisco Castillo LARA and Maria Elena Lara, Debtors.**

**Gary ZAGER and Richard Westley Pion, Appellants,**

v.

**Francisco Castillo LARA and Maria Elena Lara, Appellees.**

**BAP No. CC–82–1177HKV.**

**Bankruptcy No. SA–81–02989 AP.**

**Adv. No. SA–81–1345.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Oct. 14, 1982.

Decided March 15, 1983.

Howard L. Rosoff, Dodell & Rosoff, Los Angeles, Cal., for appellants.

Michael J. Bazyler, Los Angeles, Cal., Scott W. Wellman, Wellman & Cane, Newport Beach, Cal., for appellees.

James H. Karp, Volk, Newman, Gralla & Karp, A Professional Corp., Los Angeles, Cal., for amicus curiae.

Before HUGHES, KATZ and VOLINN, Bankruptcy Judges.

HUGHES, Bankruptcy Judge:

Appellants, one of whom is licensed by the State of California as a real estate broker, appeal from an order holding that their loan to appellees violated the state constitution because of the amount of interest charged. We affirm.

I

Zager, who was employed as a bartender at the time of trial, has held a California real estate broker's license for several years. The record is not clear as to how he occupied himself in 1980 other than to participate in two loan transactions, one of which is the centerpiece of this litigation.

Mr. and Mrs. Lara, wishing to refinance an existing loan, sought the assistance of Mr. Lara's brother-in-law, Mr. Molinar, who in turn approached Zager. The latter indicated a desire to participate in the transaction on two conditions: his ability to raise half of the loan from a bank and the willingness of Mr. Pion, a friend, to undertake the other half. In due course, Pion and Zager loaned the Laras $17,500 in return for a $20,000 promissory note carrying 15% interest and due in six months. The $2500 difference was called a bonus. The note was secured by the Laras' residence and by a parcel of real property held for investment. The effective interest rate on the loan, taking into account the bonus and the 15% for six months, was 43.57%.

The Laras were unable to pay the note when it became due. Instead, they executed a second promissory note for $1000 as consideration for the agreement of Pion and Zager to withhold foreclosure on their deeds of trust for three months. This note was secured by a third deed of trust and carried an interest rate of 21%.

Still unable to pay the amounts due three months later, the Laras now sought to avoid foreclosure by filing a Chapter 13 petition under the Bankruptcy Code. Zager and Pion then requested relief from the automatic stay, 11 U.S.C. § 362(d), to which the Laras responded with a series of affirmative defenses. The stay aspect of the litigation was resolved by sale of the Laras' investment property for enough to satisfy the Zager-Pion demand in full, subject to resolution of the affirmative defenses by trial.

Pion and Zager received $35,593.51, including attorneys fees, in repayment of a $17,500 loan approximately 19 months after it was made.

After trial, the court held that Zager and Pion were barred by the California Constitution from charging more than 18% interest and entered judgment against Zager and Pion for $20,265, which represented recovery of $7307 interest and $6913 attorneys fees paid by the Laras plus an award for their own attorney fees and costs. It denied the Laras' request for treble damages and declined to reach their other defenses, deeming them moot.

This is the judgment on appeal.

## II

### A

Article XV, § 1 of the California Constitution, known as the state's usury law, makes it unlawful to charge more than a prescribed amount for the loan of money. The maximum charge for loans to be used primarily for personal, family or household purposes is 10% per annum, Art. XV,

§ 1(1); for other loans it is 5% per annum above the current rate for United States treasury bills in San Francisco. Art. XV, § 1(2). The court noticed judicially the applicable rate on the date of this loan to be 13% and concluded that the maximum charge permitted Zager and Pion was 18%.

There are a number of exemptions from the foregoing restrictions, including one that was added by Assembly Constitutional Amendment No. 52 (Statutes of 1979, Resolution Chapter 49) when adopted by the voters as Proposition 2 in the statewide election of November 6, 1979. In relevant part, the amendment provided that loans

made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property

are exempt from the restrictions on interest contained in Article XV.

The trial court ruled that the exemption was inapplicable in this case, even though Zager was a person licensed as a real estate broker, because he "acted as a principal and not as a broker in this transaction". Thus, it construed the exemption as being applicable only to loans made or arranged by a licensee acting in his capacity as a licensee.

The court was influenced by an attorney general's opinion that was withdrawn from publication after having been circulated. Atty. General's Opinion No. 80–122, April 29, 1980. Appellants and amici curiae * urge that reliance on the withdrawn opinion was erroneous. We do not understand the court to have considered the withdrawn opinion as authoritative, however, but merely persuasive.

### B

Appellants argue that Proposition 2 contains no "qualifying language to require that a licensed real estate broker be acting as such" and that the language "is so clear that the trial court's interpretation is tantamount to a legislative enactment..."

* The California Association of Realtors and the California Independent Mortgage Brokers Association.

Likewise, amici curiae contend that "the plain and ordinary meaning of the wording" of the exemption "refers to any real estate loan made by a person licensed as a real estate broker regardless of whether such person is also performing some other act within the course and scope of such license and regardless of whether a license is required under state law for such lending activities."

Appellees argue first that the trial court correctly found that Zager did not make or arrange the loan, because two people, rather than "a person licensed as a real estate broker," made or arranged this loan. They also argue extensively that the history and purpose of the California usury law require that the exemption apply only to persons acting in their capacity as licensed real estate brokers.

### III

In construing Art. XV, § 1 of the California constitution as amended by Proposition 2, we are guided by two principles. First, we must follow the law as construed by the Supreme Court of California. To the extent the Supreme Court has not ruled, we must ascertain as best we can from other authorities and by recognized canons of construction how the California Supreme Court would rule. *Lewis v. Anderson,* 615 F.2d 778 (9th Cir.1979); *Commissioner of I.R. v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). Second, as a federal appellate panel, we must give great weight to the trial court's construction of the law of his state. *Lewis v. Anderson, supra.*

### A

The provision in question exempts loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property . . .

In arguing that the provision has a clear and plain meaning and that the person licensed as a real estate broker need not be acting as such within its plain meaning, appellants necessarily emphasize the grammatical object of the exemption—*any per-*

*son* —and treat the balance of the clause as qualifying. (We note that amici curiae see significance in the fact that a legislative predecessor of Proposition 2 exempted loans "made or arranged by any *duly licensed real estate broker*" and that this was changed to loans "made or arranged by any *person licensed as a real estate broker*"). Thus, without the qualifying phrase ("licensed as a real estate broker"), the exemption is limited only by the real property lien requirement.

Appellants and amici curiae argue, in effect, that the real estate broker license qualification is class-identifying in the same way that "any person who throws a baseball right handed" or "any person who owns an automobile" is class-identifying. Had the draftsmen modified "any person" in either way, no one would seriously argue that the loans did not qualify for the exemptions unless they were made or arranged while playing catch or driving to work. For the same reason, as we understand their argument, appellants contend that the loans qualified for the exemption simply because Zager was a member of the identified class of persons licensed as real estates brokers by the State of California.

This is certainly a possible meaning of the language but it is hardly its plain and clear meaning. What is clearer and plainer from the language of the amendment is that the State of California's real estate broker licensing system is relevant to the exemption. It follows that a construction of the amendment that gives significance to the state system of licensing real estate brokers is permissible, if not necessary.

■ What may be merely permissible becomes mandatory, however, when the class-identifying phrase is viewed in light of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Usury exemptions are constitutionally suspect unless classification is based on rational grounds. *Carter v. Seaboard Finance Co.,* 33 Cal.2d 564, 587–88, 203 P.2d 758 (1949), holding that "the exemption of personal property brokers from the usury

restrictions of that 1934 amendment was neither unwarranted nor arbitrary, but on the contrary, was based on sound and reasonable grounds."

■ Classification that is based on a licensee's unlicensed activities would seem to be as capricious as one based on pitching style or automobile ownership, and neither appellants nor amici curiae have demonstrated how such a classification is warranted, sound or reasonable.

Amici curiae suggested such an argument in stating that

it is still important that real estate brokers, like the other classes of lenders in the exemption portion of Article XV, are heavily regulated by the Legislature and the Department of Real Estate.

The fact that real estate brokers are regulated is no doubt a rational basis for exempting loans made or arranged in their regulated capacity. That point, however, underscores the irrationality of extending the exemption to loans made or arranged by licensees in their unregulated capacity.

Given competing constructions, only one of which passes constitutional muster, the choice is clear. We hold that the trial court correctly construed Proposition 2.

### B

Our conclusion is unaffected by recourse to the recognized aids to interpretation of measures passed by voters. On the contrary, it is buttressed by such recourse.

"It is a general rule of statutory construction that the courts will interpret a measure adopted by vote of the people in such a manner as to give effect to the intent of the voters adopting it." *Kaiser v. Hopkins,* 6 Cal.2d 537, 538, 58 P.2d 1278 (1936).

"[R]ecourse may be had, as an aid to interpretation, first to the summary prepared by the attorney general pursuant to his authority and duty ... and then to the arguments for and against the measure sent to the voters and set forth in the pamphlets accompanying the sample ballots ..." *Carter v. Seaboard Finance Co.,* su-

pra, 580–81, 203 P.2d 758. See, *Porten v. University of San Francisco,* 64 Cal.App.3d 825, 134 Cal.Rptr. 839 (1976).

The ballot title and summary are of slight help, the only relevant reference in the summary being:

Extends exemption to loans made or arranged by licensed real estate brokers when secured by lien on real property.

Nor is the argument in favor of Proposition 2 presented in the voters handbook of much more help. Co-authored by Assemblyman Walter M. Ingalls, who drafted the amendment, the argument nowhere refers to the specific provision at issue in this appeal or, for that matter, to real estate brokers or their licenses. The gist of the argument is that the then existing California usury law was unrealistic and contributed to a shortage of money available for loans, which in turn curtailed "the building of new homes, apartments, stores, and factories to provide needed new jobs."

Proposition 2, Assemblyman Ingalls and Senate Minority Floor Leader William Campbell argued, "deals with that problem in realistic and *controlled* circumstances." (Emphasis in original).

The only detailed reference to real estate loans is found in this passage:

For example, mortgage bankers, who last year provided $13 billion for housing loans in California, are limited to a 10 percent rate and in 1979, have practically abandoned providing conventional mortgage loans.

The statement of the Legislative Analyst, which also appeared in the voters handbook, recites in part:

This ballot measure would amend the Constitution to make several changes in existing law regarding the level of interest rates that may be charged.

1. Under existing law, loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property are subject to a 10 percent interest rate ceiling. Such loans commonly are made by mortgage brokers

and mortgage bankers. Under this measure such loans would be exempt from the constitutional limitations on interest rates that may be charged.

It is apparent from the foregoing that Proposition 2, insofar as is relevant to the provision we are called upon to construe, was presented to the voters as a means of encouraging loans made by mortgage brokers and mortgage bankers, particularly the latter. While it is not as apparent why the amendment expressly refers to persons licensed as real estate brokers and does not mention either mortgage brokers or mortgage bankers, it is instructive that, according to the Legislative Analyst, loans made or arranged by real estate broker licensees "commonly are made by mortgage brokers and mortgage bankers." Under California law, a mortgage loan broker is a real estate broker.

> A mortgage loan broker is customarily retained by a borrower to act as the *borrower's agent* in negotiating an acceptable loan. All persons engaged in this business in California are required to obtain real estate licenses. (Emphasis in original).

*Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 782, 157 Cal.Rptr. 392, 598 P.2d 45 (1979). The court relied on Calif.Bus. & Prof.Code § 10131(d), which provides that a real estate broker

> is a person who, for a compensation . . ., does . . . one or more of the following acts for another or others:
>
> .    .    .    .    .
>
> (d) *Solicits borrowers or lenders* for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners *in connection with loans secured* directly or collaterally *by liens on real property.* (Emphasis supplied).

Thus, mortgage loan brokers and, presumably, mortgage bankers must be licensed as real estate brokers to the extent that their activities come within the definition of a real estate broker. Calif.Bus. & Prof.Code § 10130; *Wyatt v. Union Mortgage Co.*, supra. Indeed, a real estate licensee acting within the meaning of Section 10131(d) is governed by the provisions of Calif.Bus. & Prof.Code §§ 10240–10248, and this article is sometimes referred to as the Mortgage Brokers Loan Law.

Mortgage bankers, on the other hand, are specifically regulated under provisions of Calif. Financial Code §§ 18680 et seq. and therefore constitute a separate, identifiable class. Another provision of Proposition 2 permitted the legislature to exempt additional classes of persons, such as mortgage bankers. See, 58 Ops.Atty.Gen. 487 (1975).

We conclude that in passing Proposition 2 the voters sought to encourage lending activity by mortgage loan brokers and mortgage bankers primarily by exempting loans made or arranged by persons licensed as real estate brokers and secondarily by enabling the legislature to exempt mortgage bankers expressly.

All of this is fully consistent with the trial court's ruling that Proposition 2 exempts only loans made or arranged within the scope of a real estate broker's license. Nothing in the ballot title, summary, argument favoring the proposition or statement of the Legislative Analyst suggests an intention on the part of the draftsmen or voters to extend the exemption to real estate brokers engaged in unlicensed activity. To the contrary, emphasis on mortgage loan brokers and mortgage bankers is evidence that only licensed activity was considered.

Furthermore, the voters were told by the proponents of Proposition 2 that it dealt with the problem it addresses in "*controlled circumstances.*" (Emphasis theirs). It is reasonable to assume that the voters understood from this that the exemption applied to loans made by persons who are subject to control or regulation. Not surprisingly, the California Real Estate Commissioner exercises control or regulation over licensees only to the extent they are acting pursuant to their licenses. Calif.Bus. & Prof.Code §§ 10071, 10130.

### C

The cases in which California courts have considered Proposition 2 are consistent with

the trial court's holding. In *Orden v. Crawshaw Mtg. & Inv. Co., Inc.,* 109 Cal.App.3d 141, 167 Cal.Rptr. 62 (1980), the court held that passage of Proposition 2 validated existing loans that otherwise would have been usurious. The interest charged did not exceed the maximum allowed under Proposition 2.

It was argued in *Chapman v. Farr,* 132 Cal.App.3d 1021, 183 Cal.Rptr. 606 (1982) that the real estate broker was not acting in that capacity. The court concluded that the "transaction was 'arranged' by him [as agent] and it was therefore exempt under the amended constitutional language." *Id.* at 1025. Arranging loans as agent is one of the statutory activities of a real estate broker. *Wyatt v. Union Mortgage Co.,* supra; Calif.Bus. & Prof.Code §§ 10131(d).

### D

Amici curiae argue that the trial court's construction of Proposition 2 conflicts with a published interpretation of the amendment by the California Department of Real Estate.

It is true that "a contemporary administrative construction of a statute by an agency charged with its enforcement and interpretation, 'is entitled to great weight unless it is clearly erroneous or unauthorized'." *International Business Machines v. State Board of Equalization,* 26 Cal.3d 923, 930–31; 163 Cal.Rptr. 782, 786, 609 P.2d 1 (1980).

The interpretation cited by amici curiae was published in the form of a news story in the *Real Estate Bulletin,* Official Publication of the California Department of Real Estate (Winter 1979) at p. 6 and contained the following statements:

A real estate broker, whether acting as a principal or agent in a real property loan transaction, is now exempt from the constitutional and statutory prohibitions against usury . . .

.      .      .      .      .

Real estate brokers will now enjoy the exemptions from interest rate limitations that has existed for so-called institutional

lenders and certain other enumerated lenders for the past 45 years.

Even assuming that these informal observations are otherwise "entitled to great weight," they are clearly erroneous for the reasons stated in subparts A and B.

### IV

Having held that Proposition 2 applies to loans made or arranged by persons licensed as real estate brokers only when the broker is acting within the scope of his license, we address the facts of this appeal.

■ In the words of the trial court, "Zager acted as a principal and not as a broker in this transaction" as to his funds for the reason that "making a real estate loan with his own money is not included in the definition" of a real estate broker. Calif.Bus. & Prof.Code § 10131.

Furthermore, Section 10133(a) expressly excludes from the definition of a broker anyone who directly performs any act within the scope of the Real Estate Law with reference to his own property. *Bucella v. Mayo,* 102 Cal.App.3d 315, 324, 162 Cal. Rptr. 369, 374 (1980).

Zager's funds were one-half of the total loan to the Laras. Such a loan is not contrary to law, but it is not a statutory function of a California real estate broker and the loan therefore was not made or arranged in Zager's capacity as a licensee.

The balance of the Laras' loan consisted of funds supplied by Pion. Since Zager brought Pion into the transaction, we conclude that Zager solicited a lender in connection with a loan secured by liens on real property. Calif.Bus. & Prof.Code § 10131(d). Thus this part of the loan was made or arranged by a licensee acting within the scope of his license. Were that all, it would be necessary to reverse the judgment appealed as to Pion's half of the loan.

According to Zager, he "received no commission for arranging the Pion share of the loan," a fact that places the transaction outside the scope of the license. One is not, by definition, a broker unless the act is done "for compensation or in expectation of com-

pensation ..." Calif.Bus. & Prof.Code § 10131.

The judgment appealed is affirmed.