731 F.2d 1455
 In re Francisco Castillo LARA and Maria Elena Lara, Debtors.
Gary ZAGER and Richard Westley Pion, Plaintiffs-Appellants,
v.
Francisco Castillo LARA and Maria Elena Lara, Shannon Haney,
Trustee, Defendants-Appellees.
 Nos. 83-5748, 83-6067.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1983.
Decided May 1, 1984.
 
 H. Steven Schiffres, Dodell & Rosoff, Los Angeles, Cal., for plaintiffs-appellants.
 Cheryl White Mason, Michael J. Bazyler, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States Bankruptcy Appellate Panels of the Ninth Circuit.
 Before CHAMBERS and SNEED, Circuit Judges, and MARQUEZ*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 The bankruptcy court held that a loan made by Gary Zager, a licensed real estate broker, and Richard Pion to Francisco and Maria Lara violates the usury prohibitions of Article XV of the California Constitution. The bankruptcy appellate panel affirmed. We affirm in part and reverse in part.
 
 I.
 FACTS
 
 2
 Appellees Francisco and Maria Lara, husband and wife, wished to borrow money to refinance an existing loan. They sought the assistance of Mrs. Lara's brother, Henry Molinar, who in turn approached appellant Gary Zager. Zager agreed to lend money to the Laras on two conditions: first, that he could borrow half of the necessary funds from a bank; and second, that a friend, appellant Richard Pion, would agree to undertake the other half of the loan. Zager and Pion subsequently loaned the Laras $17,500 in return for a $20,000 promissory note carrying 15% interest and due in six months. The effective interest rate on the $17,500 loan for six months was 43.57%. The note was secured by trust deeds on the Laras' home and another piece of property that the Laras held for investment. The Laras were unable to repay the loan and they executed a second note for $1,000 in exchange for appellants' agreement to extend the $20,000 note for three months. The $1,000 note carried an interest rate of 21% and was also secured by a deed of trust. Three months later, the Laras were still unable to repay the amounts due.
 
 
 3
 To avoid foreclosure, the Laras filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. Zager and Pion sought relief from the automatic stay provisions of the Code, 11 U.S.C. Sec. 362(d), and the Laras responded by claiming various affirmative defenses. Before the bankruptcy court ruled on the stay issue, the Laras sold their investment property and satisfied appellants' demands in full, subject to the bankruptcy court's resolution of the affirmative defenses.
 
 
 4
 The bankruptcy court held that Article XV of the California Constitution bars appellants from charging more than 18% interest on the loan.[1] It entered judgment against Zager and Pion for $20,265, which represented recovery of $7,307 interest and $12,958 for costs and attorney's fees. Zager and Pion unsuccessfully argued that the loan is exempt from the usury prohibitions because Zager is a licensed real estate broker and California Constitutional Amendment 52, popularly known as Proposition 2, provides an exemption for loans "made or arranged by any person licensed as a real estate broker by the state of California and secured in whole or in part by liens on real property." Cal. Const. art. XV, Sec. 1(2).[2] The bankruptcy court held this exemption inapplicable because it found that Zager did not make or arrange the loan in his capacity as a licensed broker. The bankruptcy appellate panel (BAP) affirmed, In re Lara, 28 B.R. 16 (Bkrtcy.App. 9th Cir.1983), and Zager and Pion filed a timely notice of appeal with this court.[3]
 
 II.
 DISCUSSION
 A. Standard of Review
 
 5
 This case is one of first impression. It concerns the scope of usury provisions of the California Constitution. Appellees maintain that the decision of the bankruptcy court rests on findings of fact that are subject to a clearly erroneous standard of review. We disagree. The facts of this case are essentially undisputed. It turns on the scope and meaning of a California constitutional amendment and a recently enacted state statute. The bankruptcy court's conclusions of law are subject to a de novo standard of review. In re Bialac, 712 F.2d 426, 429 (9th Cir.1983). Although ordinarily a district court's interpretation of the law of the state in which it sits is entitled to some deference, see In re Mistura, Inc., 705 F.2d 1496, 1497 (9th Cir.1983), such deference is inappropriate where the applicable law changes after the decision of the lower court.
 
 
 6
 B. The Effect of California Civil Code Section 1916.1
 
 
 7
 Both the bankruptcy court and the BAP concluded that the exemption contained in Proposition 2 applies only to loans "made or arranged" by licensed real estate brokers acting in their licensed capacity. A statute enacted after the decisions of the lower courts requires us to reject this conclusion.
 
 
 8
 California Civil Code Sec. 1916.1 declares that with respect to the usury exemption for loans by licensed real estate brokers, "[t]he term 'made or arranged' includes any loan made by a person licensed as a real estate broker as a principal or as an agent for others, and whether or not the person is acting within the course and scope of such license." Cal.Civ.Code Sec. 1916.1.[4] The enacting legislation provides:
 
 
 9
 The Legislature finds that the Legislature in adopting ACA 52 in 1979 (Res.Ch. 49, Stats.1979), and the people in approving that measure as Proposition 2 in November 1979, established an additional class exempt from interest rate limitations for persons licensed as real estate brokers by the State of California on the basis that real estate brokers are qualified by the State on the basis of education, experience, and examination, and that the licenses of real estate brokers can be revoked or suspended if real estate brokers perform acts involving dishonesty, fraud, or deceit with intent to substantially benefit themselves or others, or to substantially injure others.
 
 
 10
 St.1983, c. 307, Sec. 2.
 
 
 11
 Section 1916.1 applies to this case even though the statute was enacted after the decisions of the lower courts. Changes in California usury law apply retroactively to causes of action not reduced to judgment. Chapman v. Farr, 132 Cal.App.3d 1021, 183 Cal.Rptr. 606 (1982). We cannot accept the Laras' argument that this case has been reduced to judgment because the trial court entered final judgment.[5] Chapman explicitly holds that a usury law applies retroactively even if judgment has been entered and the case is pending on appeal when the law is changed. "Judgment does not become final so long as the action in which it is entered remains pending, and an action remains pending until final determination on appeal." 132 Cal.App.3d at 1025, 183 Cal.Rptr. at 608 (citations omitted).
 
 
 12
 The findings of the California Legislature expressed in Section 1916.1 necessarily guide our resolution of this case. Under California law, there is a "strong presumption in favor of the Legislature's interpretation of a provision of the [California] Constitution." Methodist Hospital v. Saylor, 5 Cal.3d 685, 692, 97 Cal.Rptr. at 5, 488 P.2d 161, 166 (1971). That interpretation is controlling if it is at least possible and not unreasonable. Id. at 693-94, 97 Cal.Rptr. 1, 6-7, 488 P.2d at 166-167. Because Section 1916.1 presents a reasonable interpretation of Proposition 2, we must accept the legislature's conclusion that a licensed real estate broker need not be acting in his licensed capacity for the usury exemption to apply.[6]C. The Usury Exemption and Equal Protection Concerns
 
 
 13
 The BAP noted equal protection concerns in holding that the exemption applies only to loans made or arranged by real estate brokers acting in their licensed capacity. 28 B.R. at 19-20. The usury exemption, the BAP concluded, would be irrational if it were extended to a real estate broker's unlicensed activities.[7] We reject this conclusion and find that the usury exemption as interpreted in Section 1916.1 satisfies the equal protection guarantees of the United States and California constitutions.
 
 
 14
 The legislature's interpretation of Proposition 2 does not violate the Equal Protection Clause of the Fourteenth Amendment. Because the classification at issue does not interfere with the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the proper standard for review is the rational basis test rather than strict scrutiny. E.g., Brandwein v. California Board of Osteopathic Examiners, 708 F.2d 1466, 1470 (9th Cir.1983). To challenge successfully a legislative classification under the rational basis test, a party must prove that the facts on which the legislature may have relied in shaping the classification "could not reasonably be conceived to be true by the governmental decisionmaker." Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). A legislative classification satisfies the rational basis test if there is a conceivable legitimate purpose that would justify the distinctions made in the state's regulatory scheme. Brandwein, 708 F.2d at 1471.
 
 
 15
 The classification involved in this case easily withstands review under the rational basis test. The California legislature concluded that the usury exemption applies to licensed real estate brokers whether or not they are acting in their licensed capacity. The express justification for the expansive interpretation of Proposition 2 is the legislature's finding that real estate brokers are licensed on the basis of education, experience, and examination and that brokers' licenses can be revoked or suspended for acts involving dishonesty, fraud, or deceit. St.1983, c. 307, Sec. 2. Regardless of our view concerning the desirability of the statute, we must defer to the state government because we cannot conclude that the legislature's actions were irrational. See Vance v. Bradley, 440 U.S. at 97, 99 S.Ct. at 942.
 
 
 16
 We also find that Section 1916.1 does not violate the equal protection provisions of the California Constitution.[8] In applying these provisions to economic regulations, the court must conduct a "serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals." Newland v. Board of Governors, 19 Cal.3d 705, 711, 139 Cal.Rptr. 620, 623, 566 P.2d 254, 258 (1977). The classification must be found to rest on some differentiation fairly related to the object of the regulation. Hays v. Wood, 25 Cal.3d 772, 786, 160 Cal.Rptr. 102, 108, 603 P.2d 19, 26 (1979). Where the California Supreme Court has concluded that a classification does not in fact bear a reasonable relationship to the goals attributed to the legislation, it has not hesitated to find the regulation invalid on equal protection grounds. See, e.g., American Bank & Trust Co. v. Community Hospital, 33 Cal.3d 674, 689-91, 190 Cal.Rptr. 371, 381-83, 660 P.2d 829, 839-41 (1983) (limitation on damages in action against health care provider); Hays v. Wood, 25 Cal.3d at 792-95, 160 Cal.Rptr. at 112-14, 603 P.2d at 29-31 (disclosure requirements for public officials). Moreover, a court may examine the factual premises underlying the statute, and if it rejects those premises it may conclude that the legislative classification is invalid as a denial of equal protection. American Bank & Trust Co., 33 Cal.3d at 688-91, 190 Cal.Rptr. at 381-83, 660 P.2d at 839-41.[9]
 
 
 17
 The purpose of Section 1916.1 is to clarify the exemption for licensed brokers added to the California Constitution by Proposition 2. We cannot conclude that the interpretation adopted by the legislature either conflicts with the intent of the voters in adopting Proposition 2 or creates an irrational classification. Cf. Carter v. Seaboard Finance Co., 33 Cal.2d 564, 587-88, 203 P.2d 758, 773 (1949) (usury exemptions are constitutionally valid if classification is based on reasonable grounds). With regard to the intent of the voters, appellees rely on a statement of the Legislative Analyst that appeared in the Voters Handbook for Proposition 2. That statement recites in part:
 
 
 18
 Under existing law, loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property are subject to a 10 percent interest rate ceiling. Such loans are commonly made by mortgage brokers and mortgage bankers. Under this measure such loans would be exempt from the constitutional limitations on interest rates that may be charged.
 
 
 19
 Appellees also refer to a statement in the Voters Handbook declaring that Proposition 2 would deal "in realistic and controlled circumstances" (emphasis in original) with the problem of a scarcity of money available for loans. Appellees would have us infer that Proposition 2 was intended to exempt only loans made by brokers in their licensed capacity. The reference to mortgage brokers and mortgage bankers does not suggest that the exemption is limited to such individuals. Nor does the reference to "controlled circumstances" indicate that only brokers acting in their licensed capacity will be exempt. These materials are inconclusive as to the intent of the voters in endorsing Proposition 2, and we therefore conclude that the legislative interpretation does not conflict with that intent.[10]
 
 
 20
 The classification adopted by the legislature also has a reasonable basis. In order to obtain a real estate brokers license, an applicant must possess two years previous experience as a licensed real estate salesman, or equivalent general experience in real estate, or a four year college degree that includes a specialization in real estate. Cal.Bus. & Prof.Code Sec. 10150.6. The Real Estate Commissioner is authorized to require proof and to call hearings concerning the honesty and truthfulness of applicants. Id. Sec. 10152. Applicants must also pass a written examination that tests knowledge of real estate law, the canons of ethics related to real estate practice, and the regulations of the Real Estate Commissioner. Id. Sec. 10153. Finally, applicants for real estate licenses must satisfy specified education requirements. Id. Secs. 10153.2-10153.5.
 
 
 21
 In addition to the various requirements for obtaining a brokers license, California also regulates the activities of real estate brokers by imposing sanctions such as suspension or revocation of the license. Many of the grounds for such sanctions relate to a broker's licensed activities. See id. Sec. 10177. However, a broker who violates any provision of the Franchise Investment Law, or who engages in fraudulent or dishonest dealings, or who is found guilty of a crime involving moral turpitude may have his license suspended regardless whether he was acting in his licensed capacity. Id. Secs. 10177(b), (j), (m).[11] We conclude that the extensive regulation of licensed real estate brokers provides a reasonable basis for the legislature's classification.
 
 
 22
 D. Application of the Real Estate Brokers Exemption to the Loans Involved in this Case
 
 
 23
 In light of our conclusion that Section 1916.1 applies to this case, we must determine if the loan to the Laras comes within the usury exemption for loans made or arranged by licensed real estate brokers. As did the BAP, we will analyze the loan by considering separately the portions funded by Zager and Pion.[12] Section 1916.1 establishes that the portion of the loan funded by Zager is exempt because it was "made" by a licensed real estate broker. Accordingly, we reverse the decisions of the lower courts to the extent that they hold that Zager's portion of the law violates the usury prohibitions.
 
 
 24
 We must next determine whether the portion of the loan funded by Pion was "arranged" by a licensed broker and therefore exempt.[13] The language of Proposition 2 and the legislative history of the amendment fail to explicate the meaning of the phrase "arranged by a licensed real estate broker."[14] Nor have the California courts defined the term "arranged." In Chapman v. Farr, 132 Cal.App.3d 1021, 183 Cal.Rptr. 606 (1982), the court held that a broker's loan of his parents' funds was exempt from the usury prohibitions because the transaction was "arranged" by a licensed broker. Id. at 1026, 183 Cal.Rptr. at 609. Chapman, however, does not elaborate on what involvement by a licensed broker is required for a loan to be "arranged" within the meaning of Proposition 2.
 
 
 25
 The BAP reasoned that a loan can be "arranged" only if the broker has acted as a licensee, that is, performed a function for which a license is required under the California Business and Professions Code. 28 B.R. at 22; see also Preble & Herskowitz, supra, note 13, at 25. Some commentators have suggested even more stringent requirements.[15] See H. Miller & M. Starr, supra note 14, at 284-85, 287; Bosko & Larmore, supra note 14, at 63.
 
 
 26
 We agree with the BAP and hold that a loan is "arranged" within the meaning of Proposition 2 only if the real estate broker is acting in his licensed capacity.[16] As the BAP noted, 28 B.R. at 22, Zager brought Pion into the transaction, and therefore solicited a lender in connection with a loan secured by liens on real property. This activity requires a real estate brokers license if it is done "for a compensation or in expectation of a compensation." Cal.Bus. & Prof.Code Sec. 10131(d). Because Zager did not receive a commission for soliciting Pion's participation in the loan, the BAP concluded that Zager had not "arranged" the loan within the scope of his license. 28 B.R. at 22-23. We agree.
 
 
 27
 Zager and Pion argue that we define the term "compensation" too narrowly. Zager claims that he was "compensated" for soliciting a lender inasmuch as he would not have undertaken the loan, and would have received no interest from the Laras, absent Pion's participation. The fact that Zager would profit if Pion agreed to undertake the loan, however, does not imply that Zager was acting for compensation. Under California law, a broker is not acting in his licensed capacity unless he receives compensation for acting on behalf of someone else. Froid v. Fox, 132 Cal.App.3d 832, 840, 183 Cal.Rptr. 461, 465 (1982). A broker who realizes a profit from participating in a real estate transaction on his own behalf does not act for "compensation." See id. at 841, 183 Cal.Rptr. at 466; Robinson v. Murphy, 96 Cal.App.3d 763, 769-70, 158 Cal.Rptr. 246, 250 (1979). It follows that Zager did not receive compensation for bringing Pion into the transaction, and we hold, therefore, that Pion's portion of the loan was not "arranged" by a licensed real estate broker.[17]
 
 III.
 CONCLUSION
 
 28
 We hold that Zager's portion of the loan is exempt from the usury prohibitions of the California Constitution because it was "made or arranged" by a licensed real estate broker. We affirm the holdings of the lower courts that Pion's portion of the loan is not exempt. On remand, the bankruptcy court shall recalculate its award to the Laras in light of our decision and determine if the promissory notes entitle Zager and Pion to recover attorney's fees incurred in this appeal. With respect to Zager's portion of the loan, the bankruptcy court shall also consider the other affirmative defenses raised by the Laras.
 
 
 29
 AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.
 
 
 
 *
 Honorable Alfred Marquez, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Article XV makes it unlawful to charge more than a prescribed interest rate for "any loan or forbearance of any money, goods or things in action." The maximum rate for loans for use primarily for personal, family, or household purposes is 10% per annum. Cal. Const. art. XV, Sec. 1(1). For other loans, the prescribed rate is the higher of 10% per annum or 5% per annum plus the current rate for United States treasury bills in San Francisco. Id. Sec. 1(2)
 The bankruptcy court took judicial notice that the applicable treasury bill rate was 13%, and concluded that the maximum permissible rate for the loan to the Laras was 18%.
 
 
 [2]
 Loans made or arranged by licensed real estate brokers and secured by real property are but one of many exceptions to the usury prohibitions contained in Article XV. Also exempt are loans made by building and loan associations, credit unions, licensed pawnbrokers or personal property brokers, banks, and nonprofit agricultural cooperatives. Cal. Const. art. XV, Sec. 1(2)
 Proposition 2 also amended Article XV to permit the legislature to exempt other classes of lenders from the usury prohibitions. Pursuant to this authority, the legislature has created exemptions for corporate insurance companies, see Cal.Ins.Code Sec. 1100.1, and "consumer finance lenders." Cal.Fin.Code Secs. 24000-24010.
 
 
 [3]
 The BAP issued its decision on March 15, 1983. Appellants filed a petition for rehearing before the BAP on March 28, 1983. Before the BAP ruled on the petition, appellants filed a notice of appeal with this court on April 11, 1983. Appellants then asked this court to stay the appeal until the BAP ruled on the petition for rehearing. On June 8, 1983, the BAP denied rehearing. This court granted the motion to stay on July 5, 1983. Appellants then filed a second notice of appeal on July 8, 1983
 We need not address the effect of the first notice of appeal on the BAP's jurisdiction to consider the petition for rehearing. Cf. In re Bialac, 694 F.2d 625, 627 (9th Cir.1982) (filing notice of appeal with BAP divests bankruptcy court of jurisdiction to issue injunction). The first notice of appeal when timely filed with this court established our jurisdiction.
 
 
 [4]
 Section 1916.1 was enacted on July 18, 1983. The new law became effective on January 1, 1984. See Cal.Gov.Code Sec. 9600
 
 
 [5]
 The Laras note that the final judgment rule, 28 U.S.C. Sec. 1293, requires that a judgment be final before it can be appealed. A determination that a judgment is final for purposes of our appellate jurisdiction, however, does not establish that it is final for purposes of applying retroactively changes in California law
 
 
 [6]
 Before the enactment of Section 1916.1, it was unclear whether the usury exemption applied only if the broker was acting in his licensed capacity. An opinion of the California Attorney General concluded that the exemption was so limited, see Ops.Cal.Att'y.Gen. No. 80-122 (April 29, 1980), but that opinion was subsequently withdrawn. On the other hand, the California Department of Real Estate declared in an official publication that Proposition 2 applies to real property loan transactions whether a real estate broker acts as a broker or agent and that real estate brokers now enjoy the same exemption from interest rate limitations as do other classes of lenders exempted under Article XV. California Dep't of Real Estate, Real Estate Bulletin, Winter 1979, at 6
 Two decisions by the California Court of Appeals also did not resolve whether the exemption is limited to brokers acting in their licensed capacity. In response to a claim that a broker had not acted in his licensed capacity, the court in Chapman v. Farr, 132 Cal.App.3d 1021, 183 Cal.Rptr. 606 (1982), found that the broker had structured the transaction as an agent for the lenders and the loan therefore had been "arranged" by a licensed real estate broker. Id. at 1026, 183 Cal.Rptr. at 609. The court, however, did not explicitly state that a broker must be acting in his licensed capacity for the exemption to apply. Orden v. Crawshaw Mortgage & Investment Co., 109 Cal.App.3d 141, 167 Cal.Rptr. 62 (1980), held that Proposition 2 applied retroactively to a loan made by a licensed real estate broker. The Orden court did not discuss whether the exemption applies only if the broker acts in his licensed capacity.
 
 
 [7]
 This conclusion assumes that the basis for the exemption is the fact that licensed activities by brokers are subject to certain regulations. See 28 B.R. at 20. Section 1916.1 rejects this assumption and suggests alternative grounds that provide a rational basis for extending the exemption to loans made by licensed brokers whether or not they are acting in their licensed capacity. See infra. In identifying the rational basis for a challenged classification, we are not limited to the purposes or justifications articulated by the state at the time of the law's enactment. See Brandwein v. California Board of Osteopathic Examiners, 708 F.2d at 1466, 1471 (9th Cir.1983); Lamb v. Scripps College, 627 F.2d 1015, 1021 n. 9 (9th Cir.1980)
 
 
 [8]
 Cal. Const. art. 1, Sec. 7; id. art. 4, Sec. 16
 
 
 [9]
 This approach contrasts with the method of analysis for purposes of the Equal Protection Clause of the federal constitution. Parties may not challenge legislation under the Equal Protection Clause merely by tendering evidence that the legislature was mistaken with respect to the legislative facts on which the classification is apparently based. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981). So long as the question is "at least debatable," the courts may not substitute their evaluation of legislative facts for that of the legislature. See id. at 464, 469, 470, 101 S.Ct. at 723, 726, 727
 A state may, of course, apply a more stringent standard of review of legislative classifications as a matter of state law under the state's equivalent of the Equal Protection Clause. Id. at 461 n. 6, 101 S.Ct. at 722 n. 6. The California Supreme Court has previously noted that the state guarantees of equal protection may demand analysis different from that which would obtain under the federal constitution. Serrano v. Priest, 18 Cal.3d 728, 764-65, 135 Cal.Rptr. 345, 366-67, 557 P.2d 929, 950-51 (1976), cert. denied, 432 U.S. 907, 97 S.Ct. 2951, 53 L.Ed.2d 1079 (1977).
 
 
 [10]
 As the BAP noted, 28 B.R. at 20, the ballot title and the summary of Proposition 2 provide no guidance concerning the scope of the exemption for licensed real estate brokers. The BAP also correctly observed that nothing in the legislative history establishes that the voters intended that the exemption would apply to brokers acting in their unlicensed capacity. 28 B.R. at 21. This point, however, does not suggest that the legislature's interpretation of Proposition 2 is unreasonable. Because the legislature's interpretation is presumed valid, Saylor, 5 Cal.3d at 692, 97 Cal.Rptr. at 5, 498 P.2d at 166, the party challenging this interpretation bears the burden of establishing that the legislature's action conflicts with the intent of the voters
 
 
 [11]
 For example, a realtor who offered to sell property as a principal without disclosing its dilapidated condition suffered revocation of his license although he was not acting in his licensed capacity. Katz v. Dep't of Real Estate, 96 Cal.App.3d 895, 158 Cal.Rptr. 766 (1979). Similarly, a licensee who pled guilty to possession of marijuana was subject to license revocation proceedings in Golde v. Fox, 98 Cal.App.3d 167, 159 Cal.Rptr. 864 (1979)
 
 
 [12]
 Appellees argue that the loan was not "made" by a licensed real estate broker because it was made by both Zager, who possesses a broker's license, and Pion, who lacks such a license. We do not believe that mere participation by a licensed broker as a principal suffices to make an entire loan exempt. However, we also reject appellees' suggestion that the loan necessarily is not exempt because Zager was not the sole principal. In brief, we conclude that a loan can qualify for the exemption if half of it was "made" by a licensed real estate broker and the other half was "arranged" by such a broker
 
 
 [13]
 Appellees argue that California law prohibits Zager from both making and arranging a loan in the same transaction. In support of this assertion appellees cite an interpretative letter issued on May 13, 1980, by the California Department of Real Estate. That letter, however, indicates only that a licensed broker may not lend his own funds in a transaction in which he holds himself out to be acting as an agent for the borrower. This point does not suggest that a broker may not both act as a principal and solicit another lender's participation in a loan in which the broker is not acting as an agent for the borrower. Nor do we think it is necessary for the broker to be acting as an agent for the borrower in order for the loan to be "arranged" by a licensed real estate broker. See Preble & Herskowitz, Recent Changes in California and Federal Usury Laws: New Opportunities for Real Estate and Commercial Loans, 13 Loy.L.A.L.Rev. 1, 26-27 (1979)
 
 
 [14]
 Commentators have noted that Proposition 2 left unclear the meaning of the term "arranged." H. Miller & M. Starr, 4 California Real Estate 285-86 (1982 Supp.); Bosko & Larmore, Practice under the new California usury law, 55 Cal.St.B.J. 58, 63 (1980)
 
 
 [15]
 Miller and Starr suggest that a broker has "arranged" a loan if he satisfies four criteria. He has "(1) made the contract with the parties and introduced them to each other; (2) assisted the borrower in the preparation of the loan application and supporting documentation; (3) negotiated the terms of the loan, not only as to terms and interest, but also as to other negotiable terms; and (4) has received compensation for such services." H. Miller & K. Starr, supra note 14, at 287
 
 
 [16]
 This conclusion is consistent with Section 1916.1. The new law declares that a loan may be "made" by a licensed broker whether or not he is acting in his licensed capacity. This point does not alter the BAP's conclusion, which we accept here, that a loan is not "arranged" by a real estate broker unless he is acting in his licensed capacity
 
 
 [17]
 Zager and Pion also argue that the loan was arranged by a licensed real estate broker because it was arranged by Mrs. Lara's brother, Henry Molinar. This argument is meritless. Henry Molinar is a licensed real estate salesman, not a real estate broker. Proposition 2 does not exempt loans made by real estate salesmen. Nor does the record persuade us to reject the bankruptcy court's finding that no licensed real estate broker other than Zager arranged the loan