[Civ. No. 24568.   Second Dist., Div. Two.   July 15, 1960.]

RICHARD CAVANAUGH, Respondent, v. LEONORE M. HIGH, Appellant.

G. G. Baumen for Appellant.

George R. Coan for Respondent.

ASHBURN, J.—Appeal from judgment for plaintiff in unlawful detainer action. The main issue is whether a conventional relationship of landlord and tenant existed between plaintiff and defendant. The trial court found that it did. Subject to exceptions specified in section 1161, subdivision 1, and section 1161a, Code of Civil Procedure, that is *sine qua non* to maintenance of such an action. (*Francis* v. *West Virginia Oil Co.*, 174 Cal.168, 170 [162 P. 394] ; *Fredericksen* v. *McCosker*, 143 Cal.App.2d 114, 116 [299 P.2d 908] ; 30 Cal. Jur.2d, § 347, p. 486.)

By answer defendant denied that there was any landlord and tenant relationship and affirmatively alleged in a cross-complaint that she had deeded to plaintiff her home under circumstances which constituted it a security, an equitable mortgage, and that plaintiff was wrongfully asserting that deed to be an absolute conveyance. Upon this issue the trial court found for plaintiff.

Other issues were resolved by the pretrial conference order which says: "This is an action in unlawful detainer filed in the Municipal Court of this district with the cross-complaint for declaratory relief and for cancellation of a deed for fraud and pursuant to stipulation the case was transferred to this court, for trial." It incorporates a joint statement of counsel

containing the following: "1. That in January, 1957, defendant and cross complainant Leonore M. High owned the property described as Lot 15, Tract 19940 as per map recorded in Book 506, pages 30-31 of Maps, in the office of the County Recorder of Los Angeles County. That on said property there is a First Trust Deed in favor of Mutual Life Ins. Co., and a Second Trust Deed in favor of Celeste Construction Co. and assigned by them to Richard Cavanaugh. 2. In January, 1957, High was in default on both trust deeds. 3. High and Cavanaugh executed agreement dated March 18, 1957, Exhibit 'A' of cross complaint. 4. High executed and delivered a deed to Cavanaugh. 5. On November 20th, 1957, Cavanaugh served High with a notice to pay rent or quit, Exhibit 'A' of the complaint. 6. That High is now in possession of the premises. 7. That Cavanaugh has kept the payments current on the First Trust Deed, and has paid the taxes." Said agreement of March 18, 1957, is in the form of a letter signed by Cavanaugh addressed to High and approved by her. The body of same is set forth in the margin.[1]

Appellant contends that this agreement constitutes a security and hence an equitable mortgage; that is primarily a question of intention (*Chapman* v. *Hicks*, 41 Cal.App. 158, 162 [182 P. 336]; *Greene* v. *Colburn*, 160 Cal.App.2d 355, 358 [325 P.2d 148]), to be deduced from all the attending facts and circumstances including the subsequent conduct of the parties (*Greene* v. *Colburn, supra*, at p. 358). ▉ *Husheon*

---

[1] "Confirming our conversation of recent date, you are handing me a Grant Deed to your property known as Lot 15 of Tract 19940 as per map recorded in Book 506, pages 30 and 31 of Maps in the office of the County Recorder of said county.

"On the 25th day of March 1957, it is my understanding that the property will be foreclosed. I am to satisfy the loan company so they will not foreclose for a period of 90 days.

"During this period you agree to sell, refinance or in some other manner pay all delinquent taxes, payments to the Mutual Savings & Loan Association of Pasadena or reimburse me for making said payments and to pay all the sums now owing me to make them current, including 6% interest on monies advanced by me and to keep all taxes hereafter current until said transaction has been completed. If you have met these requirements at the end of said period I agree to sell to you said property at my cost plus interest, at 6%.

"Sixty-six dollars ($66.00) per month is to be paid by you as rental during the 90 days period. Payments to start March 25, 1957.

"Time is the essence of this contract."

Below the signatures is this addendum: "If the property is in the process of refinancing, or is placed for sale prior to expiration of the 90 days period, time will be extended to complete the sale or refinancing, in no case to exceed an additional 90 days. During this period above rental agreement must be carried out."

v. *Husheon,* 71 Cal. 407, 411 [12 P. 410] : ''Whether a deed absolute in form be a mortgage or not, is a mixed question of law and fact, to be determined from all the evidence, written and oral; and in determining it, all the facts and circumstances attending the transaction should be considered. ▪ If it were given as a security for a loan of money, a court of equity will treat it as a mortgage; and whether it was so given or not, is the test by which its character must be judged.'' (See also *Peninsular etc. Co.* v. *Pacific S.W. Co.,* 123 Cal. 689, 695 [56 P. 604] ; 33 Cal.Jur.2d, § 21, p. 438.)
▪ There is a presumption that a deed absolute in form (as at bar) is just what it purports to be and not a mere mortgage (*Mahoney* v. *Bostwick,* 96 Cal. 53, 58 [30 P. 1020, 31 Am.St.Rep. 175] ; *Gronenschild* v. *Ritzenthaler,* 81 Cal.App. 2d 138, 144 [183 P.2d 720] ; 33 Cal.Jur.2d, § 74, p. 481), and the burden of proof rests upon the one who contends that the deed is a mortgage to prove the issue by clear and convincing evidence (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583]·; 33 Cal.Jur.2d, § 77, p. 483), the question of whether it carries that much weight being for the trial judge and not the court of review. ▪ On appeal the question is governed by the substantial evidence rule like any other issue of fact. (*Beeler* v. *American Trust Co., supra,* 24 Cal.2d 1, 7; *Greene* v. *Colburn, supra,* 160 Cal.App.2d 355, 358; *Buck* v. *Jewett,* 170 Cal.App.2d 115, 117 [338 P.2d 507] ; 33 Cal.Jur.2d, § 78, p. 484.)
▪ Upon the cardinal issue of what was the intent of the parties in making the deed from defendant to plaintiff there is a substantial conflict in the evidence. We must accept as established that which is most favorable to the contentions of respondent. On March 18, 1957, defendant owned the property in question which was subject to a first trust deed held by Mutual Savings and Loan Association of Pasadena, and a second trust deed which was owned by plaintiff. Both were in default and Mutual had started a foreclosure; defendant's last day to forestall the same was March 25, 1957. She was unable to pay the necessary sums and plaintiff, whose security was thus imperiled, visited her at her home. After some preliminary conversation plaintiff offered to take a grant deed in lieu of foreclosure and give her an agreement whereby she would have an option to repurchase the property after a specified period provided she would produce the money specified in the agreement which was to be signed. She ''was tickled to death at the time.'' Plaintiff drew the agreement and deed

and on March 20 defendant called at his office, both parties executed the agreement, and she signed, acknowledged and delivered the deed to plaintiff. The agreement, after acknowledging delivery of the deed, contains a promise on plaintiff's part to obtain a postponement of foreclosure of the first trust deed for 90 days and defendant agrees during that period to pay in some manner all delinquent taxes and payments due Mutual or to reimburse plaintiff for such payments if made by him, also to pay all sums owing on his second lien and six per cent interest on moneys advanced by him, and to keep all taxes current. Plaintiff agreed, if all those terms were met at the end of said period ''to sell to you said property at my cost plus interest, at 6%.'' Also: ''Sixty-six dollars ($66.00) per month is to be paid by you as rental during the 90 days period. Payments to start March 25, 1957.'' An addendum provides for an extension of time for 90 days if the property is in the process of refinancing or placed for sale prior to expiration of the first 90 days period, but ''[d]uring this period above rental agreement must be carried out.''

Plaintiff made all payments of insurance, taxes, back installments on first trust deed and costs, an aggregate amount of $417; this sum was paid on March 25, 1957, the last day for avoiding foreclosure of the first trust deed. At the time of trial plaintiff had advanced an aggregate of $2,357.60. He testified: ''The basis of the agreement was that I was to take the deed in lieu of a foreclosure. She was to pay rent, and I gave her an option to buy it back. It was strictly a rental agreement.'' Defendant testified that plaintiff was to refinance the property, take out what was coming to him and ''you will still have your property.'' Also: ''He said, 'Well, I will simply hold this as security and I will not record it until the end of the 90-day period. In the event you are not able to refinance at the end of the 90-day period, and I have to come in and refinance, I will need this.' It was strictly on that basis that I signed the grant deed.'' Plaintiff testified that he never made any such promise and there was no talk about holding the deed as security. The court found that the contract was ''a sale of said real property by defendant to plaintiff and gave to defendant an option to repurchase said property with the condition that defendant find a purchaser or refinance said property within 90 days from and after March 18, 1957; that defendant did not find a purchaser for said property or refinance said property within the 90-day period; that said agreement required

defendant to pay to plaintiff the sum of $66.00 per month as and for rent beginning March 25, 1957.''

Defendant was a licensed real estate broker with previous experience and had an understanding of real estate transactions. She had made no payment on plaintiff's second trust deed since October, 1956. On July 28, 1957, plaintiff having received through Edgewood Escrow Service defendant's check for $66 bearing the notation ''Aug. 1st payment to Mutual,'' wrote her saying, in part: ''I am writing this letter to notify you that this check is not a payment to Mutual Savings but a rental payment due on the 25th of each month. If there is any question as to the legal ownership of the property and who is making the payments to Mutual Savings, an investigation on your part is in place. I am returning this check enclosed with this letter and will expect a new check without any mention of Mutual Savings on it. If payment correctly made out is not delivered to me within five days (not through the fictitious escrow at Edgewood Escrow Service) an eviction notice will be served.'' On August 2d defendant sent to plaintiff her check for $66 '' [i]n accordance with request contained in your letter dated Sunday, July 28, 1957.'' This she did after consulting a lawyer who drafted the letter for her. After quizzing defendant about this the trial judge correctly appraised her conduct as follows: ''And still, when you got a demand in June to pay the rent, under August 2nd you sent him a check and said, in effect, 'I am hereby paying the rent,' didn't you? THE WITNESS: That was at the advice of counsel, sir. I went to an attorney. THE COURT: You must have gotten some funny advice under those circumstances, madam. I mean, your actions aren't consistent with what you are claiming here, it doesn't seem to me. . . . You went to him in May, which was within the 90-day period, and tendered what you thought was full compliance with the agreement, and he refused it. THE WITNESS: Correct. THE COURT: It seems to me, at that point it should have put you on notice he was going to violate his agreement, if you thought he was going to violate it, and that you should have proceeded accordingly, but all your actions after that are inconsistent with that, madam. You not only didn't tender it to him in writing, but two or three months later you paid him some rent. To me, that is unexplainable, and I am asking you if you can explain it.''

Defendant never made any tender to plaintiff or made any real effort to perform the terms of the agreement of March 18th. She testified that her equity was then $4,000, which of

course presupposes ability to keep the two trust deeds current, a thing she was unable to do. Plaintiff laid out $2,357.60. Assuming the correctness of defendant's estimate of the value of her equity there was no glaring inadequacy of price which would reflect upon the fairness of the transaction. Defendant further testified that plaintiff always contended that the $66 a month was rent. There is no room for doubt that the basic finding of a leasing is well supported by substantial evidence.

Appellant makes a series of technical attacks upon the judgment and antecedent proceedings, only one of which do we find to be meritorious.

It is said that the complaint states no cause of action for the reason, among others, that the notice to pay rent or quit which is attached as an exhibit was not signed or dated. That is true of the exhibit, but the complaint alleges that the notice was personally served by plaintiff upon defendant on November 20, 1957, and the answer says: "[D]efendant admits service upon her of the notice to pay rent or quit set forth therein, and admits that she has refused, and she does still refuse, to pay rent to plaintiff or to surrender possession of said premises to plaintiff." Likewise the joint statement upon pretrial: "5. On November 20th, 1957, Cavanaugh served High with a notice to pay rent or quit, Exhibit 'A' of the complaint." The statute (§ 1161, subd. 2) says nothing about a signature to the written notice, and certainly any purpose it could have had was fully served by the personal service of the notice upon defendant. Be that as it may, defendant's continuous insistence that there was no lease and that a notice to pay or quit would not lie, renders inconsequential any defects in a notice if served, dispenses with any notice at all.

*Calhoma Oil Corp.* v. *Conniff,* 207 Cal. 648, 651 [279 P. 771]: "Assuming, only, that the owners of the land should have given some other or further notice, the lessee has all along contested, and now contests, the right of the lessors to claim possession. Therefore, any defect in or failure of demand or notice may be regarded as having been waived by the appellant. (*Williams* v. *Edge, supra.*)"

*Williams* v. *Edge,* 192 Cal. 254, 255 [219 P. 747]: "No doubt the landlord should have given notice and demanded possession in order to mature his cause of action for possession (Tiffany on Landlord and Tenant, p. 81, § 12, subd. 4), but the plaintiff does not rely upon the statute permitting an action for unlawful detainer with its accompanying penalties and, inasmuch as the defendant contested and now contests

plaintiff's right of possession, the failure to make a demand or give notice was waived.''

It is argued that at the time of service of notice the rent claimed in the complaint was not due and could not have accrued until five days later. There is no semblance of merit in this. The notice served on defendant demands payment of one installment of rent in the sum of $66 due on September 25, 1957, for the month of September 25 to October 25. This was served on November 20th. The complaint filed January 2, 1958, alleges this fact, refusal to pay, and the accrual of subsequent rents on October 25, November 25 and December 25, making a total arrearage of $264 for recovery of which sum plaintiff prayed. There was nothing wrong about this. The plaintiff in such an action is entitled to recover all delinquent rents due at the time of trial. (*Flournoy* v. *Everett*, 51 Cal.App. 406, 408 [196 P. 916]; 30 Cal.Jur.2d, § 385, p. 518.)

The judgment awards plaintiff $924 as rent accrued to date and appellant says that because the court found defendant had paid to plaintiff during the period of March 25, 1957, to January 21, 1959, the sum of $462 as rent, it follows that rent had been paid to October 25, 1957, and therefore the installment demanded in the notice had been paid before suit filed. A subsidiary contention is that payments of rent like all other periodic payments should be credited first to the earliest installment due. That principle is not here applicable. The finding, construed in the light of the evidence, plainly means that $264 was unpaid at the time of suit representing installments due September 25, October 25, November 25 and December 25, and that the balance of the $924 accrued subsequent to that time. Findings must be construed so as to support the judgment if reasonably possible. (48 Cal.Jur.2d, § 314, p. 317.)

But appellant is correct in her contention that the court erroneously awarded ''the further sum of $66.00 per month beginning January 25, 1959 and monthly thereafter until defendant surrenders possession to plaintiff.'' *Pfitzer* v. *Candeias*, 53 Cal.App. 737, 741 [200 P. 839]: ''The court rendered judgment for 'the further sum of $4.05 per day for each day thereafter during the time that defendant occupies said premises.' Respondents contend that this part of the judgment is authorized by the provision of section 3283 of the Civil Code, that damages may be awarded 'for detriment . . . certain to result in the future.' In cases of this char-

acter a defendant may hold possession, under certain conditions, pending appeal. It may be months or even years before the defendant is required to surrender possession. It does not appear by what means the court can determine what damages are 'certain to result in the future.' The value of the use and occupation may be greater or less than at the time of the trial. No statute or decision has been cited, and none has been found, which would authorize a judgment of the character rendered for future damages.'' To the same effect see *Costello* v. *Martin Brothers,* 74 Cal.App. 782, 786 [241 P. 588]; *Roberts* v. *Redlich,* 111 Cal.App.2d 566, 569-570 [244 P.2d 933]; 30 Cal.Jur.2d, § 385, p. 519. The same language appears in the conclusions of law.

In her reply brief appellant refers to the judgment provision ''that the agreement dated March 18, 1957 by and between the plaintiff and defendant and by reason of which defendant was in possession of the premises located at 6321 Forrestdale Ave., Glendora, California is hereby forfeited,'' claims it is ambiguous and inquires: ''If the agreement is forfeited, then where does this leave the status of the property? Are the parties then back in the same position that they were before the agreement and the documents made pursuant to it were executed?'' Actually there is no problem for the language of the judgment construed according to the applicable principle above stated means that defendant's tenancy created by the agreement is forfeited.

No other points urged by counsel for the respective parties require discussion.

The conclusions of law are amended by striking from Paragraph I thereof the phrase ''and the further sum of $66.00 per month beginning January 25, 1959 and monthly thereafter until defendant surrenders possession to plaintiff.'' The judgment is modified by striking therefrom the words ''and the further sum of $66.00 per month beginning January 25, 1959 and monthly thereafter until defendant surrenders possession to plaintiff''; as thus modified the judgment is affirmed, respondent to recover his costs on appeal.

Fox, P. J., and Richards, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.