[Civ. No. 43394. First Dist., Div. Two. Sept. 7, 1979.]

BETTY J. ROBINSON, Plaintiff and Respondent, v.
TERRIS MURPHY, Defendant and Appellant;
REAL ESTATE EDUCATION, RESEARCH AND
RECOVERY FUND, Real Party in Interest and Appellant.

**COUNSEL**

Irving J. Kornfield for Defendant and Appellant.

George Deukmejian, Attorney General, and Tyler P. Pon, Deputy Attorney General, for Real Party in Interest and Appellant.

Donald L. Pitcock for Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Defendant, Terris Murphy, and real party in interest, Real Estate Education, Research and Recovery Fund[1] (hereafter Fund), appeal from an order directing payment from the Fund of a judgment obtained by plaintiff against defendant Murphy.[2]

Defendant is a licensed real estate broker, who purchased a house and moved it to a vacant lot which he also owned. Defendant hired Mr. Gough, a contractor, to do the work required to bring the house up to code standards. Plaintiff was interested in purchasing this house, and discussed the matter with defendant. Defendant's real estate sign was placed on the property. In response to certain questions asked by plaintiff, defendant represented that he was not the owner of the property, only the real estate broker. During negotiations, plaintiff expressed concern about an adequate drainage system, and was assured by defendant that an adequate drainage system would be provided. However, no such system was ever installed on the property.

On May 8, 1969, plaintiff went to defendant's real estate office to sign a purchase agreement for the property and to give defendant a deposit on the property. She did so, and for the first time learned that defendant, along with his wife, were the owners of the property. The purchase agreement which plaintiff signed stated, "It is understood that one of said sellers is a licensed agent." The agreement listed Tim Murphy Realty as the broker, and defendant signed the agreement as an agent. The agreement also provided that defendant and his wife, as sellers, agreed to pay Tim Murphy Realty a 6 percent broker's commission.

---

[1]The Real Estate Education, Research and Recovery Fund was abolished effective January 1, 1977 (Stats. 1976, ch. 271, § 2, p. 565; Bus. & Prof. Code, § 10450.6) and the unencumbered balance of money in such fund transferred to a separate account in the Real Estate Fund "for the purposes of real estate education, research and recovery. . . ."

[2]They also purport to appeal from "the Minute Order . . . dated August 26, 1977, striking the Minute Order of August 12, 1977," which ordered counsel for plaintiff to prepare findings of fact and conclusions of law. Appellants have apparently abandoned this portion of their appeal and make no mention of same in their briefs. Dismissal is therefore appropriate.

Plaintiff purchased the house on or about August 13, 1969, and moved in. She later found the drainage to be inadequate, which caused damage to the house and her belongings. Defendant did not repair this defect.

Plaintiff brought an action for damages based on four causes of action: (1) negligent performance; (2) breach of implied warranty; (3) violation of statute; and (4) fraudulent deceit. She obtained judgment against defendant individually and doing business as Tim Murphy Realty, and against defendant's wife individually, in the amount of $14,671.05. Judgment was entered August 27, 1975. Findings of fact and conclusions of law were neither requested nor entered, and the judgment did not specify upon which causes of action it was based.

Defendant filed for bankruptcy March 1, 1976, and the total amount of the judgment remained unsatisfied. Pursuant to section 10471 of the Business and Professions Code,[3] plaintiff then initiated the present action by filing an application for an order directing payment of judgment out of the Fund. The Fund was joined as real party in interest.

This application was heard on August 4, 1977, and the entire trial transcript and trial exhibits from the prior proceeding were received in evidence. Additional oral and documentary evidence was also presented. The trial court found that plaintiff had sustained the burden required by section 10472 and granted her recovery from the Fund in the amount of $10,000, which was the statutory limit. The Fund and defendant appeal from this judgment, contending that the trial court erred in finding that plaintiff had satisfied the grounds for recovery as set forth in sections 10471 and 10472.

Initially, we observe that while the Fund was established to compensate aggrieved persons for acts of misconduct committed by members of a profession licensed by the state who are themselves unable to respond in damages (*Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 663 [121 Cal.Rptr. 794]), the scheme of compensation authorized by statute is not unlimited. Apart from the ceiling placed upon the maximum amount recoverable from the Fund, several hurdles must be surmounted before the Fund is obliged to make payment.

■ The right to recover from the Fund is a statutorily created cause of action, and a plaintiff has the burden of showing compliance with the

---

[3]Unless otherwise specified, all code section references herein are to the Business and Professions Code.

provisions of section 10472. The parties stipulated in the trial court that the requirements of subdivisions (a), (b), (d), (e), (f) and (g) of section 10472 have been met. The issue here is compliance with subdivision (c).

Subdivision (c) requires the aggrieved person to show that he has obtained a judgment as set out in section 10471. At the time of the transaction here involved, that section required "a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, under grounds of fraud, misrepresentation or deceit arising directly out of any transaction where the judgment debtor was licensed and performed acts for which a license is required under this part. . . ."

Section 10131 defines the term "real estate broker," in pertinent part, as "a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others: [¶] (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property or a business opportunity."

Section 10133, subdivision (a), exempts from the definition of a real estate broker "Anyone who directly performs any of the acts within the scope of this chapter with reference to his own property . . . ."

■ Plaintiff contends that she has satisfied the requirements of section 10471. However, her position is refuted by the separate and conjunctive effect of sections 10131 and 10133, subdivision (a).

The exemption given a broker who sells his own property is not an innovation, but reflects an established principle of the law of agency.

■ A broker is the agent of his principal, and his role is to bring buyer and seller together with the aim of consummating a sale (*Rhode v. Bartholomew* (1949) 94 Cal.App.2d 272, 278 [210 P.2d 768]). The normal brokered sale is thus seen to be a tripartite transaction. But when a broker wishes to sell his own property, section 10133, subdivision (a), allows him to utilize his professional expertise and resources without surrendering his status as a principal. Although a broker is involved, this role is subsumed within the superseding characterization of the person as a principal to the transaction: his ancillary status as a broker is not

sufficient to alter the fundamentally bilateral nature of such a sale. Stated differently, an individual who is by profession a real estate broker is not, by virtue of this fact, deprived of the right to act as a principal in the sale of his own property. Thus it has been held that "when one deals with his own property his negotiations with reference to the sale or exchange thereof do not constitute him a broker. . . ." (*Williams* v. *Kinsey* (1946) 74 Cal.App.2d 583, 592 [169 P.2d 487]; to the same effect, see 34 Ops. Cal.Atty.Gen. 146, 147; 10 Cal.Jur.3d, Brokers, § 16, p. 490; Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) § 6:4, pp. 179-184; 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 238, p. 824; Bernstein, *Licensing of Real Estate Agents in California* (1972) 5 U.C.Davis L.Rev. 130, 150-154.) Section 10133, subdivision (a), codified this universally accepted rule, and it is apparent that the trial court recognized the applicability of that statute, since it found that Murphy's sale of his own property was lawful.

■ In addition, Murphy, as a vendor-broker, was exempted from the remedial coverage of the Fund not only by section 10133, subdivision (a), but also because he does not meet the definition of a broker as set out in section 10131. It is undisputed that Murphy was selling property in which he had an undivided interest. He could not be considered to be a broker who "acts for another or others" within the meaning of section 10131. This was the conclusion reached in the recent case of *McGaughey* v. *Fox* (1979) 94 Cal.App.3d 645 [156 Cal.Rptr. 593]. There, it was held that a corporation (Oren), which was a licensed real estate broker, was not acting in that capacity within the meaning of section 10471 or 10131 when Oren undertook to sell to the plaintiff certain units in a limited partnership. At the time, Oren was both a general and a limited partner in the venture. Oren pocketed the proceeds of the sale and did not transfer them to the partnership. (Pp. 648-649.) The appellate court held that since Oren sold to the plaintiff only those units which Oren itself owned as a limited partner, recovery could not be had against the Real Estate Fund on the plaintiff's judgment against Oren. The court concluded that it could not, "under the guise of liberal construction, disregard the express provisions of section 10471 which authorize recovery from the Real Estate Fund only if a broker performed acts for which a real estate license is required, i.e., if he acted for another in the fraudulent transaction. The trial court impliedly found that Oren acted for itself, not for the partnership, in selling investment units to plaintiff. The evidence supports that finding which, in turn, supports the judgment denying recovery from the Real Estate Fund." (P. 651.)

In this instance, the trial court correctly found that the fact that the property was held in joint tenancy by Murphy and his wife would not affect his power to sell, stating, "Defendant Terris Murphy sold to plaintiff real property of which such defendant and his wife were the owners. As owners they were allowed by law to act on their own behalf in negotiating and consummating sale of such property, without the intervention of a real estate broker. The fact that defendant was a real estate broker did not deprive him of such privilege of selling on his own account as principal."

This finding clearly indicates that the trial court accepted the common law concept that a married couple has one legally cognizable identity. This position is correct: a husband-broker can dispose of community property held by him and his wife. (*Wolff* v. *Hoaglund* (1970) 11 Cal.App.3d 227, 230-232 [89 Cal.Rptr. 778].) For purposes of real estate transactions, the nonbroker spouse would not be "another or others" within the meaning of section 10131. Any other construction of the statute would mean, as the Fund observes, that only unmarried brokers could sell their own property. Such an interpretation would render section 10133, subdivision (a), meaningless for the great majority of self-brokered transactions. It might also raise troublesome questions of equal protection, for no permissible or compelling state interest would be promoted by allowing unmarried brokers a greater degree of freedom to contract than that granted to married brokers. It strains credulity to believe that what the plain language of section 10133, subdivision (a), gave, the Legislature then surreptitiously withdrew through section 10131. Yet this conclusion would follow if we were to accept the attenuated reasoning which plaintiff attributes to section 10131.

Nor was this a transaction performed "for a compensation or in expectation of a compensation." Although Murphy, as vendor, agreed in the purchase agreement to pay a commission to the realty company of which he was the sole owner, Murphy's testimony at the present trial established that he included this provision in the agreement only because he felt that the income tax laws required him to do so because he was a licensed real estate broker. It is undisputed that Murphy's only gain from the sale was that which is realized by any property owner who sells at a profit. The trial court so viewed the situation and stated, during its questioning of Murphy, that it could not see "what difference it made whether you called part of your gain commission or called it profit from sale." Murphy replied that he thought that because he was in fact a broker, the income tax laws required that he treat 6 percent of the sales

price as a commission payable to the realty company of which he was the sole owner. It is evident that Murphy's interpretation of the income tax laws has no bearing upon the economic realities of Murphy's transaction with plaintiff. Murphy paid himself no "compensation," nor were his acts performed prior to the signing of the agreement done "in expectation" of any compensation other than the realization of a profit on the sale of his own property.

This analysis has shown that (1) Murphy was not acting as a broker as that term is defined in section 10131; and that (2) even if it could be said that Murphy was acting as a broker, section 10133, subdivision (a), made him an exempted broker in this transaction. It follows that the trial court's decision, imposing vicarious liability upon the Fund, was erroneous and cannot be upheld.

In view of our conclusion that sections 10131 and 10133, subdivision (a), preclude recovery against the Fund, it is unnecessary to deal with the question of whether plaintiff fulfilled the requirements of section 10471 by establishing that in her original action against Murphy, she recovered a judgment "under grounds of fraud, misrepresentation or deceit."

The purported appeal from the minute order of August 26, 1977, is dismissed. The order directing payment from the Fund of a judgment obtained by plaintiff against defendant Murphy is reversed.

Taylor, P. J., and Miller, J., concurred.