[Civ. No. 53939. First Dist., Div. Three. Sept. 11, 1984.]

SIMON GARCIA et al., Plaintiffs and Appellants, v.
HERBERT D. WETZEL, Defendant and Respondent.

COUNSEL

James J. Rowan, Howell & Hallgrimson and Castro, Rowan & Gustafson for Plaintiffs and Appellants.

Irving J. Kornfield for Defendant and Respondent.

## OPINION

**BARRY-DEAL, J.**—Simon Garcia and Odelia Garcia, his wife, appeal[1] from a summary judgment in favor of the respondent Wetzel. We affirm the judgment on the basis that the Legislature intended the exemption of the usury provision of the state Constitution (art. XV, § 1, amended Nov. 6, 1979), as clarified by Civil Code section 1916.1 (Stats. 1983, ch. 307, §§ 1, 2), to apply to real estate brokers who, acting as principals, make unsecured loans.

A summary judgment is proper only if there is no triable issue of fact and, as a matter of law, the moving party is entitled to judgment. (Code Civ. Proc., § 437c.)

■ In reviewing a summary judgment, we are limited to the facts shown in the affidavits and those admitted and uncontested in the pleadings. We determine only whether the facts so shown give rise to a triable issue of fact. Moreover, the moving party's papers are strictly construed, while those of the opposing parties are liberally construed. A summary judgment is a drastic procedure to be used with caution, and doubts as to the propriety of granting the motion are resolved in favor of the party opposing the motion. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953].)

Viewing the instant record in the light of the above rules, the pertinent facts are as follows: respondent Wetzel, a licensed real estate broker, on May 8, 1979, agreed: (1) to lend appellants $18,122.99, the sum required to redeem appellants' real property from a foreclosure sale scheduled for May 8, 1979; and (2) to assume appellants' existing loan of $14,000 on the property. The written deposit receipt agreement stated that appellants were

---

[1]The notice of appeal refers only to the summary judgment granted to respondent on January 15, 1981, on the first cause of action. No appeal was taken from the October 3, 1980, order sustaining the demurrer on the second, third, and fourth causes of action.

aware that Wetzel was purchasing the property for "*profit and speculation.*" Appellants conveyed the property to Wetzel by a grant deed dated May 8, 1979. The agreement also provided a 30-day option to repurchase the property for $22,239.45, approximately $4,000 more than Wetzel had paid. Appellants subsequently exercised this option, paid this amount, and received a reconveyance of the property. On July 16, 1979, they filed the instant complaint alleging that the $4,000 charge represented an interest rate in violation of article XV, section 1 of the state Constitution.

■ The basis of the summary judgment in favor of respondent was the retrospective application of article XV, section 1. This court (Div. One) so held in *Chapman* v. *Farr* (1982) 132 Cal.App.3d 1021, 1023-1024 [183 Cal.Rptr. 606], citing *Orden* v. *Crawshaw Mortgage & Investment Co.* (1980) 109 Cal.App.3d 141, 145-146 [167 Cal.Rptr. 62], which explained the underlying rationale, i.e., the remedies previously provided for an allegedly usurious contract are in the nature of penalty, and no person in the state has a vested right in an unenforced statutory penalty or forfeiture.

However, neither *Chapman* v. *Farr, supra,* 132 Cal.App.3d 1021, nor any published authority in this state reached the instant question of whether the exemption of article XV, section 1, applies to licensed real estate brokers who make unsecured loans on their own accounts.[2] So far as pertinent, the exemption applies to loans ". . . *made or arranged* by *any person licensed as a real estate broker* by the State . . . *and secured* in whole or in part by liens on real property, . . ."[3] (Italics added.) Respondent concedes that the loan would have been usurious in the absence of this exemption.

■ By statute, a real estate broker is defined as ". . . a person who, for a compensation . . . , does or negotiates . . . for *another or others*: [¶] (a) [s]ells or offers to sell, buys or offers to buy, . . ." real property. (Bus. & Prof. Code, § 10131, subd. (a), italics added.) The two preliminary requirements that must be met to find that a person is acting as a real estate broker within the confines of his or her license are that he or she must be acting on behalf of someone else and must be working for compensation. (*Froid* v. *Fox* (1982) 132 Cal.App.3d 832, 839 [183 Cal.Rptr. 461].) Here, re-

---

[2]In *Chapman* v. *Farr, supra,* 132 Cal.App.3d at page 1026, the court was satisfied that the evidence indicated that the transaction was "'arranged'" by the broker for his parents.

[3]Respondent baldly asserts that the transaction was "secured" by the grant deed of the property. However, no deed of trust, mortgage, promissory note, or other security document was ever executed. Further, there was no obligation that survived the execution of the grant deed. (Cf. *Cavanaugh* v. *High* (1960) 182 Cal.App.2d 714, 719-720 [6 Cal.Rptr. 525].)

spondent admittedly acted on his own behalf and not on behalf of appellants, and he received as compensation the $4,000.

Business and Professions Code section 10133, subdivision (a), expressly exempts from the definition of a real estate broker ". . . [a]nyone who directly performs any of the acts within the scope of this chapter *with reference to his own property* . . . ." (Italics added.) As this court (Div. Two) explained in *Robinson* v. *Murphy* (1979) 96 Cal.App.3d 763, 768 [158 Cal.Rptr. 246], the above statute codifies a universally accepted rule that a person dealing with his or her own property is not acting as a broker. (Accord *Froid* v. *Fox, supra,* 132 Cal.App.3d 832, 841-842.) Recently, in *Merrifield* v. *Edmonds* (1983) 146 Cal.App.3d 336, 343 [194 Cal.Rptr. 104], we characterized the taking of personal loans as an activity that does not require a real estate license.

However, in 1983, the Legislature added Civil Code section 1916.1,[4] which became effective on January 1, 1984. (Stats. 1983, ch. 307, §§ 1, 2.) The new statute reads as follows: "The restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property. The term 'made or arranged' includes *any loan made by a person licensed as a real estate broker as a principal* or as an agent for others, *and whether or not the person is acting within the course and scope of such license.*" (Italics added.)

There is a strong presumption in favor of the Legislature's interpretation of a state constitutional provision, and that interpretation is controlling if not unreasonable. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692-694 [97 Cal.Rptr. 1, 488 P.2d 161].)

We find persuasive the reasoning and discussion of the Ninth Circuit, which recently was faced with the interpretation and application of Civil Code section 1916.1 in a substantially similar situation. (*In re Lara* (9th Cir. 1984) 731 F.2d 1455.) Recognizing the retroactive application of Civil Code section 1916.1 (*Chapman* v. *Farr, supra,* 132 Cal.App.3d 1021), and

---

[4]At oral argument we granted the parties permission to file additional letter briefs on the new statute and the recent decision of the Ninth Circuit, discussed subsequently.

applying California law, the Ninth Circuit held (*In re Lara, supra,* 731 F.2d at p. 1459) that it was bound to accept the Legislature's conclusion that a licensed real estate broker need not be acting in his licensed capacity for the usury exemption to apply. In doing so, the Ninth Circuit relied on the declaration of legislative purpose set forth below[5] and (*id.,* at pp. 1460-1461) rejected an equal protection argument predicated on the federal and state Constitutions. While we are not bound by *In re Lara* on a matter of state law (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 674, pp. 4587-4588), we find its reasoning compelling, and see no need to repeat it here. We are constrained to note, however, that the interest rate charged here is over 250 percent per annum. By permitting such a transaction, the Legislature may have gone too far to encourage mortgage lending in its attempt to make more money available to consumers and stimulate the housing industry, the declared purpose of article XV, section 1.[6] (Ballot Pamp., Proposed Amend. to Cal. Const. with arguments to voters, Special Statewide Elec. (Nov. 6, 1979), pp. 10-13 (Prop. 2).)

The summary judgment is affirmed.

Scott, J., concurred.

**WHITE, P. J.**—I dissent as I do not find persuasive the Ninth Circuit's reasoning in *In re Lara* (9th Cir. 1984) 731 F.2d 1455 as to equal protection. (Cal. Const., art. I, § 7; art. IV, § 16.) In *Lara, supra,* 371 F.2d at page 1462, the Ninth Circuit concluded that the exemption from the usury law of a real estate broker's unlicensed lending activities had a reasonable basis because of this state's extensive regulation of licensed brokers. The

---

[5]Section 2 of the 1983 legislation provides: "The Legislature finds that the Legislature in adopting ACA 52 in 1979 (Res. Ch. 49, Stats. 1979), and the people in approving that measure as Proposition 2 in November of 1979, *established an additional class exempt from interest rate limitations for persons licensed as real estate brokers* by the State of California on the basis that *real estate brokers are qualified by the state* on the basis of education, experience, and examination, *and* that *the licenses of real estate brokers can be revoked or suspended if real estate brokers perform acts involving dishonesty, fraud, or deceit with intent to substantially benefit themselves or others, or to substantially injure others.*" (Italics added.)

[6]In 1979, the Legislature did enact Civil Code sections 1695-1695.14 on home equity sales contracts. (Stats. 1979, ch. 1029, § 1, p. 3536, eff. Jan. 1, 1980.) The intent and purposes of this legislation were "[t]o provide each homeowner with information necessary to make an informed and intelligent decision regarding the sale of his or her home to an equity purchaser; to require that the sales agreement be expressed in writing; to safeguard the public against deceit and financial hardship; to insure, foster, and encourage fair dealing in the sale and purchase of homes in foreclosure; to prohibit representations that tend to mislead; to prohibit or restrict unfair contract terms; to afford homeowners a reasonable and meaningful opportunity to rescind sales to equity purchasers; and to preserve and protect home equities for the homeowners of this state. . . ." (Civ. Code, § 1695, subd. (d)(1).)

court specifically pointed to the available sanctions of license suspension and revocation for a broker's unlicensed activities when these involved fraudulent or dishonest dealings or a crime involving moral turpitude. (Bus. & Prof. Code, § 10177, subds. (b), (j) and (m).) However, as the majority opinion correctly points out at page 1097, *ante,* personal loans do not require a real estate license. The instant transaction demonstrates the irrationality of extending the exemption to *any transaction* made or arranged by a person with a real estate broker's license. To me, a rational construction of the statute would apply the exemption only to a person with a real estate broker's license acting within the scope of the license.

Here, appellants knew the amount charged and that Wetzel was engaged in the transaction for speculation. Thus appellants would have difficulty in showing that Wetzel's loan involved dishonesty, fraud,[1] or deceit[2] with intent[3] to substantially benefit himself and injure them. Thus, even if the transaction was a breach of fiduciary duty (see *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [157 Cal.Rptr. 392, 598 P.2d 45]), the rarely invoked sanction of license revocation (e.g., *Golde* v. *Fox* (1979) 98 Cal.App.3d 167, 177 [159 Cal.Rptr. 864]) does not provide sufficient protection for consumer transactions like the instant one.

The instant transaction met the statutory definition of a loan (Civ. Code, § 1912)[4] with interest (Civ. Code, § 1915).[5] Direct lending is not a primary function of real estate brokers, but of the other entities who are exempted

---

[1] See section 2 of the 1983 Legislation quoted on page 1098, *ante,* at footnote 5 of the majority opinion.

[2] Fraud can be either actual or constructive. Civil Code section 1572 provides in relevant part: "Actual fraud, . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: [¶] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [¶] . . . [¶] 3. The suppression of that which is true, by one having knowledge or belief of the fact; [¶] 4. A promise made without any intention of performing it; or [¶] 5. Any other act fitted to deceive."
Civil Code section 1573 in relevant part provides: "Constructive fraud consists: [¶] 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, . . . [¶] 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

[3] A "deceit" is defined by Civil Code section 1710 as either "1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [¶] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [¶] 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or [¶] 4. A promise, made without any intention of performing it."

[4] Civil Code section 1912, so far as pertinent, provides: "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed. . . ."

[5] Civil Code section 1915, so far as pertinent, defines interest as: ". . . the compensation . . . fixed by the parties for the . . . forbearance, . . . of money."

from the usury provision precisely because their activities and interest rates are comprehensively regulated. Such an approach is consistent with the Legislature's continuing concern with limiting interest rates. The first statute of this kind was enacted in 1861. (Stats. 1861, p. 184.) (See *Carter* v. *Seaboard Fin. Co.* (1949) 33 Cal.2d 564, 574-577 [203 P.2d 758].) The general usury laws have not been repealed. (See *McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1983) 33 Cal.3d 816 [191 Cal.Rptr. 458, 662 P.2d 916].)

Further, Wetzel has failed to provide any rational basis as to why all transactions (not only those otherwise regulated) of any person with a broker's license should be exempt from the usury provisions. (Cf., *Riebe* v. *Budget Financial Corp.* (1968) 264 Cal.App.2d 576 [70 Cal.Rptr. 654] [justifying former Cal. Const., art. XX, § 22, exemption of personal property brokers and higher interest allowed for them on the basis of the lesser security afforded by personal property and the greater costs of investigation and administration].) Other regulated lenders and licensees in this state also do not enjoy a similar exemption for any transactions beyond the scope of their licenses. I would strike down on grounds of equal protection the portion of Civil Code section 1916.1 which extends the usury exemption to any transactions not within the scope of a real estate broker's license. In this society, consumers must be protected from greed.

Accordingly, I would conclude that as a matter of law, the instant loan transaction was not exempt from the usury provision.

Appellants' petition for a hearing by the Supreme Court was denied November 21, 1984. Bird, C. J., was of the opinion that the petition should be granted.