Filed 10/31/23  Amesbury v. Heger CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| TOM AMESBURY et al., | C096962 |
| Plaintiffs and Respondents, | (Super. Ct. No. CU21-085893) |
| v. | |
| BARBARA HEGER, | |
| Defendant and Appellant. | |

Defendant Barbara Heger appeals from an order denying her motion to compel arbitration of plaintiffs Tom and Lisa Amesburys' claims against her.  There is no real dispute that Heger and Tom and Lisa Amesbury entered into a valid agreement to arbitrate these claims, and the law provides that when such an agreement exists, the trial court "shall" order the parties to arbitrate.  (Code Civ. Proc., § 1281.2; further undesignated statutory references are to the Code of Civil Procedure.)  The trial court, however, appears to have denied the motion to compel on the ground that an exception to arbitration exists — namely, when "[a] party to the arbitration agreement is also a party

1

to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) We disagree and thus reverse.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In April 2020, Tom and Lisa Amesbury (the Amesburys) purchased a house from Heger using a standard form entitled "California Residential Purchase Agreement and Joint Escrow Instructions" (the Purchase Agreement). The Purchase Agreement identifies the Amesburys as the "Buyer" and the Barbara Heger Living Trust as the "Seller." We will refer to "Barbara Heger in her capacity as the trustee of the Barbara Heger Living Trust," simply as "Heger." Heger happens to be a real estate broker, and as she acted as her own broker in this transaction, she is identified in the Purchase Agreement as the seller's broker.

The Purchase Agreement provides the property is sold " 'AS-IS' in its PRESENT physical condition," subject to the buyer's inspection and investigation rights. It also provides, "Seller shall . . . DISCLOSE KNOWN MATERAL FACTS AND DEFECTS affecting the Property . . . and make any and all other disclosures required by law." Finally, it contains the arbitration clause that is at issue in this case. The clause is labeled "ARBITRATION OF DISPUTES," it is in bold type, and it provides, "The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction . . . shall be decided by neutral, binding arbitration." The Amesburys and Heger both initialed the clause, signifying their agreement to be bound by its terms.

---

**1**      The factual background is taken from the motion to compel, and the first amended complaint and attached exhibits. The parties do not dispute the truth of the allegations in the complaint or the authenticity of the attachments for purposes of resolving this appeal.

2

Prior to completing the purchase, the Amesburys hired Kevin Minto of Signet Home Inspections, LLC, to inspect the property, which he did. Minto's inspection apparently did not turn up any major issues.

Sometime after they purchased the property, the Amesburys claim they discovered defects in it, including "a poorly designed drainage system, an inadequate electrical system, a failed foundation system, defective siding on the garage, and a failed well water system." They sued Heger in her capacity as both the seller and the broker, and Minto. They asserted six causes of action against Heger, for negligence, breach of contract, nuisance, intentional misrepresentation, failure to disclose, and negligent misrepresentation. All causes of action against Heger arise out of the allegation that she failed to disclose defects in and made false representations about the property. The Amesburys asserted one cause of action against Minto for professional negligence arising out of the allegation that he negligently inspected the property. A copy of the Purchase Agreement was attached to the complaint and incorporated into it by reference. The Amesburys acknowledged that the Purchase Agreement contained an arbitration clause, but they alleged "neither the Realtor Defendants[2] nor Kevin Minto of Signet Home Inspections are privy to that contract, thereby making those remedies extra-contractual and inapplicable to this claim."

Heger, representing herself, filed a motion to compel arbitration, arguing the arbitration clause was legally binding and enforceable and covered all claims asserted against her. She submitted a declaration attaching a copy of the arbitration clause in the Purchase Agreement, and stating she had asked the Amesburys to arbitrate but they refused. In meet and confer e-mails between the parties, the Amesburys' counsel stated they refused to arbitrate because they "[did] not believe arbitration can be compelled in

---

[2] The complaint does not define the term "Realtor Defendants." Presumably it refers to Heger in her capacity as broker.

3

light of the addition of the Whole House Inspector to the lawsuit, since he is not a signatory" to the agreement to arbitrate, and because they "never agreed to arbitrate with the home inspector, another defendant in this matter."

The Amesburys opposed the motion to compel arbitration. Although they tacitly acknowledged the existence of a valid agreement to arbitrate, they argued the motion should be denied pursuant to section 1281.2, subdivision (c) (hereafter, section 1281.2(c)), which provides arbitration agreements shall be enforced unless "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." The Amesburys argued the arbitration agreement was between the Amesburys and Heger in her capacity as seller, and that Heger in her capacity as broker and Minto were *not* parties to the agreement within the meaning of this provision. They acknowledged, however, that their claim against Minto was "not based on the same facts" as, and arose from a "different duty" than, their claims against Heger.

Heger filed a reply, arguing that the exception in section 1281.2(c) did not apply because the Amesburys acknowledged their claim against Minto and their claims against her were based on different facts and duties.

A hearing on the motion was held, but we have not been provided with a transcript. Following the hearing, the trial court issued an order that stated, in full, "Plaintiff's [*sic*] Motion to Compel Arbitration is Denied."

Heger filed a timely appeal. (§ 1294 ["An aggrieved party may appeal from: [¶] (a) An order . . . denying a petition to compel arbitration"].)

4

## DISCUSSION

### I

#### *Governing Law and Standard of Review*

California has " ' "a strong public policy in favor of arbitration," ' " and a trial court is thus generally "*required* to order a dispute to arbitration when the party seeking to compel arbitration proves the existence of a valid arbitration agreement covering the dispute." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1404-1405, italics added.) Section 1281 provides, "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." And section 1281.2 provides, "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court *shall* order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, *unless*" one of three exceptions applies. (Italics added.) One of those exceptions is where "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Section 1281.2(c).) We will generally refer to this as the "third party exception." Its primary purpose is "to prevent conflicting rulings resulting from arbitration proceedings and . . . related litigation arising out of the same transaction." (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 488.) Whether the third party exception applies generally raises an issue of statutory construction, and we accordingly apply the de novo standard of review. (*Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 566 ["the correct interpretation of section 1281.2, subdivision (c), like any other issue of statutory interpretation, is a question of law subject to de novo review"]; *Laswell v. AG Seal Beach, LLC, supra*,

5

189 Cal.App.4th at p. 1406 ["whether a defendant is in fact a third party for purposes of Code of Civil Procedure section 1281.2, subdivision (c), is a matter of law subject to de novo review"]; *Whaley v. Sony Computer Entertainment America, Inc.*, at p. 484 [where sole issue on appeal is whether trial court erred in denying arbitration based on the third party exception, "we apply a de novo standard of review"].)

## II

### *Analysis*

The parties do not dispute that the Purchase Agreement contains a valid arbitration clause pursuant to which the Amesburys and Heger agreed to arbitrate all claims arising out of the purchase and sale of the house. The parties also do not dispute that the arbitration clause is broad enough to include all of the Amesburys' claims against Heger (at least in her capacity as seller). The sole issue is thus whether the trial court properly denied the motion based on the third party exception. Again, the requirements of that exception are (1) a party to the arbitration agreement (here, both the Amesburys and Heger are parties to the arbitration agreement) is also a party to a pending court action (i.e., the Amesburys' lawsuit) with a third party (i.e., someone who is not a party to the arbitration agreement), (2) that arises out of the same transaction or series of related transactions as the controversy that is subject to arbitration, and (3) that results in the possibility of conflicting rulings on a common issue of law or fact.

There are two potential third parties here: (1) Heger in her capacity as broker, and (2) Minto. We discuss each in turn.

*1. Heger is not a third party within the meaning of the third party exception.*

The Amesburys note that they sued Heger in her capacity as both the seller and the seller's broker, and that she only signed the arbitration agreement in her capacity as the seller. They argue that Heger effectively wore two hats vis-à-vis the transaction (i.e., a seller's hat and a broker's hat), and that she is a third party within the meaning of the exception when wearing her broker's hat. Heger disagrees and argues the fact that she

6

happens to be a broker does not make her a third party to the arbitration agreement in that capacity (or as she puts it, in her capacity as seller and broker she is "the same legal person"). We agree with Heger, for two reasons.

First, as relevant to the facts in this case, a real estate broker is a person who sells property on behalf of another. (See *Robinson v. Murphy* (1979) 96 Cal.App.3d 763, 767.) When a broker sells her own property rather than the property of another, it is "universally accepted" that she "is not acting as a broker." (*Garcia v. Wetzel* (1984) 159 Cal.App.3d 1093, 1097; see also *Froid v. Fox* (1982) 132 Cal.App.3d 832, 840 ["A person is not acting as a broker when he deals with his own property"].) "A broker is the agent of [her] principal, and [her] role is to bring buyer and seller together with the aim of consummating a sale [citation]. The normal brokered sale is thus seen to be a tripartite transaction," involving a broker, a buyer, and a seller. (*Robinson*, at p. 767.) When a broker sells her own property, however, she "utilize[s] [her] professional expertise and resources without surrendering [her] status as a principal. Although a broker is involved, this role is subsumed within the superseding characterization of the person as a principal to the transaction: [her] ancillary status as a broker is not sufficient to alter the fundamentally bilateral nature of such a sale. Stated differently, an individual who is by profession a real estate broker is not, by virtue of this fact, deprived of the right to act as a principal in the sale of [her] own property. Thus it has been held that 'when one deals with [her] own property [her] negotiations with reference to the sale or exchange thereof do not constitute [her] a broker . . . .' " (*Id*. at pp. 767-768.) In other words, a broker like Heger who sells her own property does not wear two hats (i.e., a seller's hat and a broker's hat); she wears only one hat (i.e., the hat of a seller who just so happens to be a broker). Heger in her capacity as broker is thus not a third party within the meaning of the third party exception.

Second, for purposes of the third party exception, a third party " 'must be construed to mean a party that is not bound by the arbitration agreement.' " (*Laswell v.*

*AG Seal Beach, LLC, supra*, 189 Cal.App.4th at p. 1407.) "[I]n many cases, nonparties to arbitration agreements are allowed to enforce those agreements where there is sufficient identity of parties. For example, defendants who are not signatories to an arbitration agreement, but who are acting as agents for the party to the arbitration provision, may be allowed to enforce the arbitration clause." (*Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1021; see also *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614 [where "a defendant acted as an agent of a party to an arbitration agreement, the defendant may enforce the agreement even though the defendant is not a party thereto"].)

In *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, for example, the plaintiffs had an account with Dean Witter & Co. (Witter), a securities broker. They purchased on margin five short-term future contracts for Japanese yen, and the purchase was handled by Norman Sobel as an agent of Witter. The plaintiffs claimed that Witter and Sobel acquired the future contracts at grossly excessive prices and negligently concealed their inexperience in currency markets and other relevant information. The plaintiffs thus sued Witter and Sobel for negligence and breach of a fiduciary relationship. Witter and Sobel moved to compel arbitration pursuant to an arbitration clause in the written customer agreement between the plaintiffs and Witter. (*Id*. at p. 1001.) The plaintiffs opposed the motion, arguing, among other things, that Sobel was not a signatory to that agreement. (*Id*. at p. 1003.) The trial court denied the motion, Witter and Sobel appealed, and the appellate court reversed, holding, as relevant here, that although Sobel was not a signatory to the arbitration agreement, he was "acting as agent[] for the signator[y]" and thus "is as entitled to the benefit of arbitration as is his principal Witter." (*Id*. at p. 1004; see also *Thomas v. Westlake, supra*, 204 Cal.App.4th at p. 614 [even though only one defendant signed arbitration agreement, all defendants were entitled to compel arbitration because the plaintiff alleged each defendant acted as agent of the others].)

8

So, too, in this case. As noted above, a real estate broker acts as an agent for the seller, who is the principal. Thus, if we accept the Amesburys' contention that Heger should be viewed as wearing two hats, then Heger in her capacity as broker was acting as agent for a party to the arbitration agreement (i.e., Heger in her capacity as seller), and is entitled to enforce the arbitration agreement.

We thus agree with Heger that she is not a third party within the meaning of the third party exception.

2. *The third party exception does not apply as to Minto*

That leaves Minto. He *is* a third party within the meaning of the third party exception (i.e., he is not a party to the arbitration agreement and may not enforce it), but we hold the Amesburys' claim against him does not arise out of the same transaction or series of related transactions as their claims against Heger, and/or there is no possibility of conflicting rulings on a common issue of fact or law if the Amesburys are compelled to arbitrate their claims against Heger while litigating their claims against Minto.

The Amesburys' claims against Heger arise out of her sale of the property, and their claim against Minto arise out of his inspection of the property. These are not the same transaction — and the Amesburys do not suggest otherwise. They do suggest — albeit with no discussion or citation to authority — that their claims against Heger and Minto arise out of a "series of related transactions" all having to do with the sale of the property. Even if we were to assume this is true, we find no "possibility of conflicting rulings on *a common question of fact or law*," largely because we find no common question of fact or law between the two sets of claims. (Section 1281.2(c), italics added.)

The Amesburys acknowledge in their opposition to the motion to compel that their claim against Minto is "not based on the same facts" as their claims against Heger. We agree. They also acknowledge in both their brief on appeal and their opposition to the motion to compel that Minto owed them "a different duty" of care than Heger owed. Again, we agree.

9

As to Heger, the gravamen of the Amesburys' claims is that she failed to disclose known defects about the property. " 'In the context of a real estate transaction, "[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]" [Citations.] Undisclosed facts are material if they would have a significant and measurable effect on market value. [Citation.]' A seller's duty of disclosure is limited to material facts; once the essential facts are disclosed a seller is not under a duty to provide details that would merely serve to elaborate on the disclosed facts. [Citation.] Where a seller fails to disclose a material fact, he may be subject to liability 'for mere nondisclosure since his conduct in the transaction amounts to a representation of the nonexistence of the facts which he has failed to disclose [citation].' " (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161, italics omitted.) "The real estate agent or broker representing the seller is under the same duty of disclosure." (*Reed v. King* (1983) 145 Cal.App.3d 261, 265, fn. 3.) In addition to claiming Heger failed to disclose known defects about the property, the Amesburys also allege she made false representations about the property. (See *Buist v. C. Dudley De Velbiss Corp.* (1960) 182 Cal.App.2d 325, 332 ["Fraud may consist of suppression or concealment of facts respecting the property in the knowledge of one party and not known to the other where there is a duty to declare, as well as in the declaration of that which is false"].) The claims against Heger will thus involve determining what she knew, what she disclosed, and whether she lied. In contrast, the gravamen of the Amesburys' claim against Minto is professional negligence — i.e., that he failed to " 'conduct [the] home inspection with the degree of care that a reasonably prudent home inspector would exercise.' " (*Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1051 [discussing professional negligence].) The claim against Minto will thus involve determining what the standard of care is and whether Minto breached it. The claims

10

against Heger and the claim against Minto are based on different legal theories and raise different legal issues.

Because we see no common questions of fact or law between the claims against Heger and the claim against Minto, it stands to reason that there is no possibility of conflicting rulings, and the trial court thus erred in denying the motion to compel arbitration.

## DISPOSITION

The order denying the motion to compel arbitration is reversed and the matter is remanded with directions for the trial court to enter a new order granting the motion. Heger shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


＿＿＿＿/s/＿＿＿＿＿＿＿＿
EARL, P. J.


We concur:


＿＿＿＿/s/＿＿＿＿＿＿＿
HULL, J.


＿＿＿＿/s/＿＿＿＿＿＿＿
ROBIE, J.


11